Kenneth A. Plevan (KP 2551)
Anthony J. Dreyer (AD 3571)
Limor Robinson (LR 6319)
SKADDEN, ARPS, SLATE,
    MEAGHER & FLOM LLP
Four Times Square
New York, New York   10036
Tel:  (212) 735-3000

**08 CIV 3606**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FRESH DEL MONTE PRODUCE INC.,  :

                     **Plaintiff,**    :

       - against -             :

                               :

**DEL MONTE PACIFIC LIMITED and**
**DEL MONTE CORPORATION,**      :

               **Defendants.** :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

08 Civ. _____

RECEIVED
APR 1 5 2008
(S.D.) S.D. N.Y.
CASHIER

**COMPLAINT**

Plaintiff Fresh Del Monte Produce Inc. ("Fresh Del Monte"), for its Complaint against defendants Del Monte Pacific Limited ("Pacific") and Del Monte Corporation ("DMC"), alleges upon personal knowledge with respect to itself and its own acts, and upon information and belief as to all other matters, as follows:

### NATURE OF ACTION

1.       This is an action for breach of contract relating to Fresh Del Monte's rights in the world-famous DEL MONTE mark.  The DEL MONTE mark originated in 1892, and has become a household name all over the world, associated with product quality, freshness, and reliability.

2.    The DEL MONTE mark is owned by DMC, which has granted certain perpetual, exclusive, royalty-free licenses for the use of the DEL MONTE name and trademarks outside the United States.

3.    Plaintiff Fresh Del Monte has the exclusive rights to use the DEL MONTE name and certain DEL MONTE trademarks (the "DEL MONTE Marks") in connection with the production, manufacture, sale, and distribution of food products in a number of territories outside the United States, including Europe, the Middle East, and Africa, by virtue of several perpetual, exclusive, royalty-free licenses from DMC to certain of Fresh Del Monte's wholly-owned subsidiaries. These rights have been acknowledged by Pacific in a June 19, 2006 settlement agreement between the parties (the "2006 Settlement Agreement"), as well as in an April 18, 2007 settlement agreement between affiliates of the parties (the "2007 Settlement Agreement").

4.    Defendant Pacific, by virtue of an exclusive, royalty-free license from DMC, has the exclusive rights to use the DEL MONTE Marks in connection with the production, manufacture, sale, and distribution of food products in certain other territories outside the United States, including certain territories in Asia.

5.    This lawsuit is brought because defendant Pacific has, in continued and complete disregard of plaintiff Fresh Del Monte's exclusive rights, repeatedly, directly and indirectly, exported food products bearing the DEL MONTE Marks into Fresh Del Monte's exclusive territories without Fresh Del Monte's permission.

6.    Fresh Del Monte has repeatedly protested Pacific's failure to respect the exclusive rights of Fresh Del Monte, but to no avail, as Pacific has continued to violate Fresh Del Monte's exclusive rights.

2

7.     As a consequence of the parties' exclusive license agreements, Fresh Del Monte has the right as a third-party beneficiary to enforce the contractual restrictions imposed on Pacific by Pacific's license agreement with DMC. Pacific's export, distribution, and/or sale of food products bearing the DEL MONTE Marks is in violation of Pacific's license agreement. In addition, Pacific's conduct violates the express provisions of the 2006 and 2007 Settlement Agreements.

## JURISDICTION AND VENUE

8.     The Court has jurisdiction over the claims herein under 28 U.S.C. § 1332. Plaintiff Fresh Del Monte is organized under the laws of the Cayman Islands, defendant Del Monte Pacific is organized under the laws of the British Virgin Islands, and defendant DMC is organized under the laws of Delaware. The amount in controversy exceeds $75,000. Venue is proper in this Court because the agreements that are the basis for the Claims in this Complaint specifically designate New York as the proper venue for all related disputes.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### The Parties

9.     Plaintiff Fresh Del Monte is the holding company for the Del Monte Fresh Produce group of companies. Fresh Del Monte is a corporation organized under the laws of the Cayman Islands. Fresh Del Monte has its principal executive offices at Walker House, Mary Street, George Town, Grand Cayman, Cayman Islands, and has U.S. executive offices at c/o Del Monte Fresh Produce Company, 241 Sevilla Avenue, Coral Gables, Florida 33134.

10.     Fresh Del Monte is one of the world's leading vertically-integrated producers, marketers, and distributors of high-quality fresh and fresh-cut fruit and vegetables on a global basis, as well as a leading producer and distributor of prepared fruit and vegetables, juices, beverages, snacks, and desserts in Europe, the Middle East, and Africa.

3

11.     Fresh Del Monte's global sourcing and logistics network allows it to provide regular delivery of consistently high-quality fresh produce, juices, beverages, processed fruit and vegetables, and value added services to its customers, which include retail stores, food clubs, wholesalers, distributors, and food service operators in more than 80 countries around the world.

12.     Defendant Pacific is a corporation organized under the laws of the British Virgin Islands, and has a principal place of business at 78 Shenton Way, #26-01 MCL Building, Singapore 079120.  Pacific is a fully-integrated international food and beverage company that develops and markets branded products to customers in certain parts of the world, including in the Philippines and the Indian subcontinent.

13.     Defendant DMC is a corporation organized under the laws of Delaware. DMC has its principal executive offices at One Market @ The Landmark, San Francisco, California 94105.  DMC is named as a nominal defendant herein because it is a party to the license agreement with Pacific that is at issue in this lawsuit.

## The Fresh Del Monte License Agreement

14.     On May 4, 1990, DMC entered into a license agreement with Del Monte International, Inc. ("International"), a subsidiary in the Del Monte Foods Europe group of companies.  On May 9, 1990, DMC entered into another license agreement with International.

15.     Pursuant to Section 2.1 of said agreements (collectively referred to as the "Fresh Del Monte License Agreements"), DMC granted International a perpetual, royalty-free, exclusive right and license to use the DEL MONTE name and DEL MONTE Marks in connection with the production, manufacture, sale, and distribution of all food products, including juices, beverages, snacks, and desserts, throughout Europe, the Middle East, and Africa.

4

16.     On or about October 1, 2004, for approximately $340 million, plaintiff Fresh Del Monte acquired the Del Monte Foods Europe group of companies, including International and the rights of International under the Fresh Del Monte License Agreements.

17.     In or about December 1, 2004, International assigned its rights under the Fresh Del Monte License Agreements to Del Monte Fresh Produce International Inc. ("DMFPI"), another wholly-owned subsidiary of Fresh Del Monte.

18.     The Fresh Del Monte License Agreements are governed by New York law and contain New York forum selection provisions.

## The Pacific License Agreement

19.     On March 29, 1996, DMC entered into a license agreement (the "Pacific License Agreement") with Pacific's predecessor in interest, Forsythia Limited ("Forsythia").

20.     Pursuant to Section 2.1 of the Pacific License Agreement, DMC granted Forsythia a perpetual, royalty-free, exclusive right and license to use the DEL MONTE Marks in connection with the production, manufacture, sale, and distribution of food products in certain countries in Asia.  Defendant Pacific subsequently acquired the rights of Forsythia under the Pacific License Agreement and agreed to be bound by the provisions and terms of the Pacific License Agreement.

21.     Pursuant to Section 10.4, the Pacific License Agreement is governed by, and interpreted in accordance with, the laws of New York State, U.S.A., and exclusive jurisdiction for disputes arising out of this Agreement is vested in the United States District Court for Southern District of New York, or in the alternative, New York State Court, New York County.

5

## Fresh Del Monte's Third-Party Beneficiary Status

22.     The territorial restrictions set forth in each of DMC's international license agreements for use of the DEL MONTE Marks, including the Fresh Del Monte and Pacific License Agreements, are intended to protect DMC and each of its international licensees from unfair competition with respect to the DEL MONTE Marks, and to protect said licensees' exclusive territorial licensed trademark rights.

23.     Thus, the Fresh Del Monte License Agreements and the Pacific License Agreement all contain the following similar provisions:

(a)     Section 3.1 of the Agreements expressly prohibits the licensee from using the DEL MONTE Marks in any manner that reduces the value of the DEL MONTE Marks or injures the other's business.

(b)     Section 6.5 of the Agreements provides that should the licensee desire that legal proceedings be initiated against a third party, and DMC declines to do so, the licensee may commence such proceeding at its own expense and may recover all damages awarded.

24.     These provisions clearly evidence an intent to permit enforcement of the territorial restrictions in DMC's License Agreements by DMC's licensees.

25.     Furthermore, Fresh Del Monte has reasonably relied upon the promises of Pacific to DMC that Pacific would abide by the terms and obligations of the Pacific License Agreement.

## The Supply Agreement

26.     On March 1, 1990, International, as buyer, entered into a Canned Fruit Supply Agreement (the "Supply Agreement") with Central American Resources, Inc. ("CAS"), a wholly-owned subsidiary of Pacific, as canner, pursuant to which CAS was to deliver canned

fruit to International. On or about August 28, 1999, CAS transferred to GTL Limited ("GTL"), another wholly-owned subsidiary of Pacific, its rights and obligations under the Supply Agreement. On or around January 1, 2005, International assigned its rights and obligations under the Supply Agreement to Fresh Del Monte.

27.    The Supply Agreement provides that GTL is prohibited from selling various canned fruit products into Fresh Del Monte's exclusive territories under the Fresh Del Monte License Agreements, except as a supplier to Fresh Del Monte or if Fresh Del Monte is acting as GTL's broker.

28.    Specifically, under Section 11 of the Supply Agreement, if GTL has canned fruit in excess of the amount to be purchased by Fresh Del Monte which it wishes to sell in Fresh Del Monte's exclusive territories in Europe, Africa, and the Middle East, GTL is required to first offer the surplus to Fresh Del Monte. If the parties are unable to agree upon mutually acceptable terms, GTL may sell the surplus using Fresh Del Monte as broker.

29.    Under Section 12(c) of the Supply Agreement, except as provided in Section 11, GTL is prohibited from soliciting, procuring, or accepting orders from purchasers other than Fresh Del Monte for the supply of canned fruit to parties in Fresh Del Monte's exclusive territories in Europe, Africa, and the Middle East.

### Pacific's Past Wrongful Conduct

30.    In the Spring of 2006, Fresh Del Monte discovered facts indicating that Pacific directly, or indirectly through its affiliates or customers, exported certain food products bearing the DEL MONTE Marks into countries in which Fresh Del Monte holds exclusive rights, including Israel, Dubai, and Qatar in the United Arab Emirates. This conduct constituted a clear violation of the territorial restrictions of the Pacific License Agreement.

31.    In April, 2006, Fresh Del Monte commenced a lawsuit against Pacific challenging its conduct.  See <u>Fresh Del Monte Produce Inc. v. Del Monte Pacific Limited</u>, No. 06/601473 (N.Y. Sup. Ct. Apr. 27, 2006).

32.    Subsequently, the parties reached a settlement of the dispute and executed the 2006 Settlement Agreement dated June 19, 2006, attached hereto as Exhibit 1.

33.    In Sections 7 and 8 of the 2006 Settlement Agreement, Pacific acknowledged Fresh Del Monte's exclusive right to use the DEL MONTE Marks in Europe, the Middle East, and Africa.  Pacific also warranted and agreed that it would not, directly or indirectly through its distributors, produce, manufacture, sell, or distribute any processed and/or canned food products (including juices, beverages, snacks, and desserts) using the DEL MONTE Marks in the countries in which Fresh Del Monte has exclusive rights.

34.    Pacific further committed in Section 9 of the 2006 Settlement Agreement to take immediate, affirmative action to cause any offending party to cease and desist from the sale and/or shipment of any processed and/or canned food products using the DEL MONTE Marks in the countries in which Fresh Del Monte has exclusive rights, and to use commercially reasonable efforts to assist Fresh Del Monte in the protection of its rights in the DEL MONTE Marks.

35.    In return for Pacific's obligations under the 2006 Settlement Agreement, Fresh Del Monte filed a Voluntary Discontinuance Without Prejudice pursuant to CPLR 3217, thus terminating the lawsuit.

36.    The 2006 Settlement Agreement provides that: "This Agreement shall be construed in accordance with the laws of the State of New York, USA, without regard to its principles of conflicts of laws.  Any claim arising under this Agreement shall be litigated in a

federal or state court of competent jurisdiction located within the City of New York, State of New York, USA."

37.     Despite its obligations under the 2006 Settlement Agreement, Pacific soon resumed its flagrant and continuous violation of Fresh Del Monte's exclusive rights under the License and 2006 Settlement Agreements.

38.     In the Fall of 2006, Fresh Del Monte customers in Europe and the Middle East reported that they had been solicited by former employees of Fresh Del Monte, who held themselves out as representatives of Pacific and offered to sell certain DEL MONTE-branded products in Europe and the Middle East, in violation of the License and 2006 Settlement Agreements, as well as the Supply Agreement.

39.     In accordance with the 2006 Settlement Agreement, Fresh Del Monte put defendant on notice of said violations.  Specifically, on November 16, 2006, Fresh Del Monte sent a letter, addressed to Richard Blossom of Pacific and Joselito Campos of Del Monte Philippines.  Upon information and belief, Del Monte Philippines is a wholly owned subsidiary of Pacific.  In its letter, Fresh Del Monte requested inter alia that these entities cease and desist from any and all unauthorized marketing or sale of food products in Fresh Del Monte's exclusive territories including Europe, Africa, and the Middle East, whether directly or indirectly.

40.     On December 4, 2006, Campos acknowledged Pacific's relationship with the Fresh Del Monte former employees whom Fresh Del Monte suspected of violating its exclusive rights.  Fresh Del Monte attempted, without success, to negotiate an acceptable settlement with Pacific.

41.     As a result, on March 14, 2007, Fresh Del Monte again commenced a lawsuit against Pacific, this time in the Southern District of New York, captioned Fresh Del

Monte Produce Inc. v. Del Monte Pacific Limited and GTL Limited, No. 07/2217. Fresh Del

Monte also commenced an arbitration pursuant to the Supply Agreement. These disputes were

ultimately resolved upon the entry into the 2007 Settlement Agreement by DMFPI and GTL

(attached hereto as Exhibit 2), and as a result the lawsuit was dismissed pursuant to Rule 41(a)(1)

of the Federal Rules of Civil Procedure on April 23, 2007.

42.    In Section 4 of the 2007 Settlement Agreement, GTL agreed that, for the

duration of the Supply Agreement, GTL and its affiliates would comply with all obligations

under the Supply Agreement, including without limitation Sections 11 and 12 governing the

prohibition on supplying canned fruit to users in DMFPI's exclusive territories other than

DMFPI.

43.    The 2007 Settlement Agreement provides that: "This Agreement shall be

governed by and construed and enforced in accordance with the laws of the State of New York,

United States, without giving effect to the principles of conflicts of law thereof. Each of Parties

hereby irrevocably agrees and submits to the exclusive jurisdiction and venue of the courts of

New York, New York in the event any action or proceeding is commenced by either Party

arising from, related to or in connection with this Agreement."

### Pacific's Most Recent Wrongful Conduct

44.    Despite having thrice been sued for its flagrant violations of Fresh Del

Monte's exclusive rights, Pacific continues to violate Fresh Del Monte's rights under the Fresh

Del Monte License Agreements and the Settlement Agreements.

45.    In late March, 2008, Fresh Del Monte's outside counsel was contacted by

the Italian Customs Department in Genoa, Italy in connection with seized food products bearing

the DEL MONTE Marks that were suspected to be counterfeit. Upon physical inspection of such

seized products, Fresh Del Monte determined that the products originated from Pacific in the Philippines. Sample photographs of the seized products are attached hereto as Exhibit 3.

46.    In addition, on April 10, 2008, Fresh Del Monte was informed that Pacific had directly shipped several containers of pineapple concentrate to Rotterdam, as indicated in Exhibit 4 hereto. As the cargo could not be traced to a Fresh Del Monte order made to Pacific pursuant to the Supply Agreement, these containers were clearly intended to be shipped to another, unauthorized destination.

47.    Neither Pacific, nor its sublicensees and customers, have the right to produce, manufacture, sell, or distribute food products using the DEL MONTE Marks, whether on a branded product or as a corporate name, in Italy or the Netherlands, both of which are within Fresh Del Monte's exclusive territory.

48.    Pacific has violated, and continues to violate, Section 3.1 of the Pacific License Agreement, as well as Sections 7, 8, and 9 of the 2006 Settlement Agreement and Section 4 of the 2007 Settlement Agreement. Such violation is intentional, deliberate, and willful.

49.    Pacific's violations constitute material breach of the Pacific License Agreement and the Settlement Agreements between the parties, as they go to the root and essence of the applicable Agreements.

### Irreparable Harm to Fresh Del Monte

50.    The exportation, distribution, and sale of food products using the DEL MONTE Marks in Fresh Del Monte's exclusive territories by Pacific, whether directly or indirectly, are a clear violation and infringement of Fresh Del Monte's valuable exclusive licensed trademark rights in the DEL MONTE Mark, and have caused, and likely will continue to cause, customer confusion, as potential customers encountering DEL MONTE products have

believed, and are likely to continue to believe, that defendants and/or their products or services emanate from or are affiliated with or sponsored by Fresh Del Monte or its affiliates.

51.    Pacific's wrongful conduct as alleged herein is causing Fresh Del Monte to suffer irreparable injury for which Fresh Del Monte has no adequate remedy at law.

### FIRST CLAIM FOR RELIEF
### (Breach of Contract as Against Pacific)

52.    Plaintiff hereby repeats and re-alleges and incorporates herein the allegations set forth in paragraphs 1-51 of this Complaint.

53.    In violation of Section 7 of the 2006 Settlement Agreement, Defendant Pacific has caused and is responsible for the exportation, distribution, and sale of food products using the DEL MONTE Marks, including the DEL MONTE corporate name, in Fresh Del Monte's exclusive territories, including Italy and the Netherlands, in express and material violation of the terms of the 2006 Settlement Agreement.

54.    In violation of Sections 8 and 9 of the 2006 Settlement Agreement, Pacific has failed to take affirmative action to assist Fresh Del Monte in the protection of its rights in the DEL MONTE Marks to ensure that food products originating from Pacific are not sold in or shipped to any country in which Fresh Del Monte has the exclusive right to use the DEL MONTE Marks.

55.    In further violation of Section 8 of the 2006 Settlement Agreement, Pacific has failed to ensure that the distributors to which it sells its food products bearing the DEL MONTE Marks are notified and informed that such products may not be distributed, shipped, or resold to countries in which Fresh Del Monte has the exclusive right to use the DEL MONTE Marks.

56.    In further violation of Section 9 of the 2006 Settlement Agreement, Pacific has failed to use commercially reasonable efforts to assist Fresh Del Monte in the protection of its rights in the DEL MONTE Marks, and to ensure that food products originating from Pacific and bearing the DEL MONTE Marks are not sold in or shipped to any countries in which Fresh Del Monte has the exclusive right to use the DEL MONTE Marks.

57.    Pacific's actions are without license from, or permission of, Fresh Del Monte.

58.    Accordingly, Pacific has materially and repeatedly breached Sections 7, 8, and 9 of the 2006 Settlement Agreement.

59.    Pacific's violations in this respect, and its resultant confusion of customers as to the source of its and Fresh Del Monte's goods, are egregious, morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to civil obligations. Such conduct is part of a pattern and practice that has been directed both at Fresh Del Monte specifically and at the public generally. Pacific's conduct establishes a high degree of bad faith evincing its dishonest failure to carry out its contractual obligations, thus frustrating Fresh Del Monte's rights to an aggravated extent.

60.    As a result of Pacific's material breach of the 2006 Settlement Agreement, Fresh Del Monte has incurred and continues to suffer damages.

## SECOND CLAIM FOR RELIEF
### (Breach of Contract as Against Pacific)

61.    Plaintiff hereby repeats and re-alleges and incorporates herein the allegations set forth in paragraphs 1-60 of this Complaint.

62.    Defendant Pacific has caused and is responsible for the exportation, distribution, and sale of food products using the DEL MONTE Marks, including the DEL

13

MONTE corporate name, in Fresh Del Monte's exclusive territories, including Italy and the Netherlands, in express and material violation of the terms of the Pacific License Agreement.

63.     Pacific's acts are without license from, or permission of, DMC or Fresh Del Monte.

64.     Pacific has accordingly materially breached Section 3.1 of the Pacific License Agreement.

65.     Pacific's violations in this respect, and its resultant confusion of customers as to the source of its and Fresh Del Monte's goods, are egregious, morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to civil obligations. Such conduct is part of a pattern that has been directed both at Fresh Del Monte specifically and at the public generally. Pacific's conduct establishes a high degree of bad faith evincing its dishonest failure to carry out its contractual obligations, thus frustrating Fresh Del Monte's rights to an aggravated extent.

66.     Fresh Del Monte, as DMC's exclusive licensee in certain European, Middle Eastern, and African countries, is an intended third-party beneficiary of the Pacific License Agreement, and has the right to sue for the breach alleged herein.

67.     As a result of Pacific's material and repeated breach of the Pacific License Agreement, Fresh Del Monte has incurred and continues to suffer damages.

## THIRD CLAIM FOR RELIEF
### (Breach of Contract as Against Pacific)

68.     Plaintiff hereby repeats and re-alleges and incorporates herein the allegations set forth in paragraphs 1-67 of this Complaint.

69.     In violation of Section 4 of the 2007 Settlement Agreement, Defendant Pacific has failed to comply with all obligations under the Supply Agreement, including without

limitation Section 11 of the Supply Agreement, by selling pineapple concentrate into Fresh Del Monte's exclusive territories, including the Netherlands.

70.    In violation of Section 12(c) of the Supply Agreement, Pacific has solicited, procured, and accepted orders from purchasers other than Fresh Del Monte for the supply of pineapple concentrate to entities in Fresh Del Monte's exclusive territories, including the Netherlands.

71.    Pacific's actions are without license from, or permission of, Fresh Del Monte.

72.    Accordingly, Pacific has materially and repeatedly breached Section 4 of the 2007 Settlement Agreement.

73.    Pacific's violations in this respect, and its resultant confusion of customers as to the source of its and Fresh Del Monte's goods, are egregious, morally reprehensible, and of such wanton dishonesty as to imply a criminal indifference to civil obligations. Such conduct is part of a pattern and practice that has been directed both at Fresh Del Monte specifically and at the public generally. Pacific's conduct establishes a high degree of bad faith evincing its dishonest failure to carry out its contractual obligations, thus frustrating Fresh Del Monte's rights to an aggravated extent.

74.    As a result of Pacific's material breach of the 2007 Settlement Agreement, Fresh Del Monte has incurred and continues to suffer damages.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Fresh Del Monte prays that the Court:

A.    Preliminarily and permanently enjoin defendants, their agents, servants, directors, principals, officers, employees, successors, assigns, and all those acting under their control or the control of their subsidiaries, affiliates or divisions and/or on their behalf and/or in

concert, from using the DEL MONTE Marks in connection with the production, manufacture, sale, and distribution of any food products, including beverages, in Fresh Del Monte's exclusive territories in Europe, the Middle East, and Africa;

        B.    Order defendants to take steps to prevent the exportation, distribution, and sale of food products using the DEL MONTE Marks in Fresh Del Monte's exclusive territories in Europe, the Middle East, and Africa;

        C.    Order the termination of the Pacific License Agreement;

        D.    Award Fresh Del Monte compensatory damages against Pacific for the wrongful acts alleged herein in an amount to be determined at trial, but not less than $100,000,000, plus interest, as well as punitive damages, and attorney's fees; and

        E.    Grant Fresh Del Monte such other and further relief as the Court deems just and proper.

Dated: April 15, 2008
     New York, New York

By: _Kenneth A. Plevan_

Kenneth A. Plevan  (KP 2551)
Anthony J. Dreyer  (AD 3571)
Limor Robinson (LR 6319)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036-6522
Telephone:  (212) 735-3000
Facsimile:  (212) 735-2000

Attorneys for Plaintiff
Fresh Del Monte Produce Inc.

Exhibit 1

# <u>SETTLEMENT AGREEMENT</u>

THIS SETTLEMENT AGREEMENT (the "Agreement") is entered into effective as of the 19th day of June, 2006 (the "Effective Date of this Agreement") between Fresh Del Monte Produce Inc. ("Fresh Del Monte Group") and Del Monte Pacific Limited (" Del Monte Pacific"). Fresh Del Monte Group and Pacific are individually referred to herein as a "Party" and collectively referred to herein as the "Parties."

## I.    <u>RECITALS</u>

1.    Pursuant to a license agreement with Del Monte Corporation, the Fresh Del Monte Group holds a perpetual, royalty-free, exclusive right and license to use the DEL MONTE name and certain DEL MONTE trademarks (collectively the "DEL MONTE Marks") in connection with the production, manufacture, sale, and distribution of all processed and/or canned food products, including juices, beverages, snacks, and desserts in countries in Europe, the Middle East, and Africa, including Israel, Dubai, and Qatar in the United Arab Emirates.

2.    Pursuant to a license agreement with Del Monte Corporation, Del Monte Pacific holds a perpetual, royalty-free, exclusive right and license to use the DEL MONTE Marks in connection with the production, manufacture, sale, and distribution of all processed and/or canned food products, including juices, beverages, snacks and desserts in certain countries in Asia, including the Philippines, India and the Indian subcontinent.

3.    The Fresh Del Monte Group has asserted that it recently discovered facts indicating that Del Monte Pacific directly or indirectly exported certain food products bearing the DEL MONTE Marks into territories in which the Fresh Del Monte Group held exclusive rights, including Israel, Dubai, and Qatar.



4.      On or about April 27, 2006, the Fresh Del Monte Group commenced a lawsuit against Del Monte Pacific in the Supreme Court of the State of New York, New York County, captioned <u>Fresh Del Monte Produce Inc. v. Del Monte Pacific Limited</u>, No. 06/601473 (the "Lawsuit").

5.      The Parties wish to resolve the issues raised in the Lawsuit and to enter into a co-operation agreement whereby the Parties recognize their respective, exclusive rights to use the DEL MONTE Marks.

6.      In consideration of the mutual undertakings set forth herein and other good and valuable consideration, receipt of which is hereby acknowledged, the Parties agree as follows:

II.     <u>**TERMS**</u>

7.      Del Monte Pacific acknowledges the Fresh Del Monte Group's exclusive right to use the DEL MONTE Marks in connection with the production, manufacture, sale, and distribution of all processed and/or canned food products (including juices, beverages, snacks, and desserts) in the countries set forth in Exhibit A hereto.  Del Monte Pacific warrants and represents that it will not directly or indirectly produce, manufacture, sell, or distribute any processed and/or canned food products (including juices, beverages, snacks, and desserts) bearing the DEL MONTE Marks in the countries set forth in Exhibit A.

8.      Del Monte Pacific will ensure that the distributors to which it sells food products bearing the DEL MONTE Marks will be notified and informed that such products (i) may only be distributed, shipped, or otherwise resold in those countries in which Del Monte Pacific has the right to use the DEL MONTE Mark, and (ii) may not be distributed, shipped, or otherwise resold in those countries in which the Fresh Del Monte Group has the exclusive right to use the DEL MONTE Mark, including without limitation those countries set forth in Exhibit A.

9.      In the event that the Fresh Del Monte Group reasonably believes that processed food products bearing the DEL MONTE Marks and originating from Del Monte Pacific are being sold or shipped for commercial purposes to any of the countries in which the Fresh Del Monte Group has the exclusive right to use the DEL MONTE Mark, including without limitation those countries set forth in Exhibit A, it shall provide prompt written notice to Del Monte Pacific. Upon receipt of such notice, Del Monte Pacific shall promptly conduct an inquiry into the facts surrounding the matters raised therein, and shall promptly advise the Fresh Del Monte Group of its findings. If it reasonably appears that food products bearing the DEL MONTE Marks and originating from Del Monte Pacific are being sold or shipped to any of the countries in which the Fresh Del Monte Group has the exclusive right to use the DEL MONTE Mark, Del Monte Pacific shall take immediate action to cause any offending party to desist from the sale and/or shipment of such products in such countries. Such action shall include providing prompt, written notice to any distributor suspected of being involved in such shipment that such products: (i) may only be distributed, shipped, or otherwise resold in those countries in which Del Monte Pacific has the right to use the DEL MONTE Mark, and (ii) may not be distributed, shipped, or otherwise resold in those countries in which the Fresh Del Monte Group has the exclusive right to use the DEL MONTE Mark. At all events, Del Monte Pacific will use commercially reasonable efforts to assist the Fresh Del Monte Group in the protection of its rights in the DEL MONTE Marks, and to ensure that processed food products originating from Del Monte Pacific and bearing the DEL MONTE Marks are not sold in or shipped to any country in which the Fresh Del Monte Group has the exclusive right to use the DEL MONTE Mark.

10.     The Fresh Del Monte Group acknowledges Del Monte Pacific's exclusive right to use the DEL MONTE Marks in connection with the production, manufacture, sale, and



distribution of all processed and/or canned food products (including juices, beverages, snacks, and desserts) in the countries set forth in Exhibit B hereto. The Fresh Del Monte Group warrants and represents that it will not directly or indirectly produce, manufacture, sell, or distribute any processed and/or canned food products (including juices, beverages, snacks, and desserts) bearing the DEL MONTE Marks in the countries set forth in Exhibit B.

11.    In the event that Del Monte Pacific reasonably believes that processed food products bearing the DEL MONTE Marks and originating from the Fresh Del Monte Group are being sold or shipped for commercial purposes to any of the countries in which Del Monte Pacific has the exclusive right to use the DEL MONTE Mark, including without limitation those countries set forth in Exhibit B, it shall provide prompt written notice to the Fresh Del Monte Group. Upon receipt of such notice, the Fresh Del Monte Group shall promptly conduct an inquiry into the facts surrounding the matters raised therein, and shall promptly advise Del Monte Pacific of its findings. If it reasonably appears that food products bearing the DEL MONTE Marks and originating from the Fresh Del Monte Group are being sold or shipped to any of the countries in which Del Monte Pacific has the exclusive right to use the DEL MONTE Mark, the Fresh Del Monte Group shall take immediate action to cause any offending party to desist from the sale and/or shipment of such products in such countries. Such action shall include providing prompt, written notice to any distributor suspected of being involved in such shipment that such products: (i) may only be distributed, shipped, or otherwise resold in those countries in which the Fresh Del Monte Group has the right to use the DEL MONTE Mark, and (ii) may not be distributed, shipped, or otherwise resold in those countries in which Del Monte Pacific has the exclusive right to use the DEL MONTE Mark. At all events, the Fresh Del Monte Group will use commercially reasonable efforts to assist Del Monte Pacific in the



protection of its rights in the DEL MONTE Marks, and to ensure that processed food products originating from the Fresh Del Monte Group and bearing the DEL MONTE Marks are not sold in or shipped to any country in which Del Monte Pacific has the exclusive right to use the DEL MONTE Mark.

12.     Within 10 days of the execution of this Agreement, the Fresh Del Monte Group shall cause to be filed in connection with the lawsuit, a Voluntary Discontinuance Without Prejudice pursuant to CPLR 3217.

13.     The provisions of this Agreement and the acknowledgements contained herein shall be binding upon the Parties hereto and their parent, subsidiary and affiliated companies, and each of their owners, officers, directors, managers, members, attorneys, agents, representatives, predecessors, successors and assigns.

14.     This Agreement constitutes the entire agreement of the Parties.  No evidence shall be permitted of the Parties' respective statements not contained in this Agreement if the effect is to contradict the undertakings herein.

15.     This Agreement shall be construed in accordance with the laws of the State of New York, USA, without regard to its principles of conflicts of laws.  Any claim arising under this Agreement shall be litigated in a federal or state court of competent jurisdiction located within the City of New York, State of New York, USA.

16.     The provisions of this Agreement may only be modified or waived in a writing signed by all of the Parties.

17.     This agreement may be executed in counterparts.  Execution by facsimile shall be deemed proper and full execution of this Agreement.

18.    In the event any provision of this Agreement is found to be void, invalid, or unenforceable as a result of any judicial or administrative proceeding or decree, this Agreement shall be construed and enforced to the maximum extent possible, as if such provision were not contained in this Agreement.

**FRESH DEL MONTE PRODUCE, INC.**

By:_____

      Name:

      Title:

**DEL MONTE PACIFIC LIMITED**

By:_____

      Name:

      Title:

18.    In the event any provision of this Agreement is found to be void, invalid, or unenforceable as a result of any judicial or administrative proceeding or decree, this Agreement shall be construed and enforced to the maximum extent possible, as if such provision were not contained in this Agreement.

**FRESH DEL MONTE PRODUCE, INC.**

By:_____
        Name:
        Title:


**DEL MONTE PACIFIC LIMITED**

By:_____
        Name: *JOSELITO D. CAMPOS. JR.*
        Title: *MANAGING DIRECTOR.*

### Schedule A

## EXCLUSIVE TERRITORIES

| | |
|---|---|
| Afghanistan | Iran |
| Albania | Iraq |
| Algeria | Ireland (Republic of Ireland) |
| Andorra | Isle of Man |
| Angola | Isle of Scilly |
| Austria | Israel |
| Bahrain | Italy |
| Belgium | Ivory Coast |
| Benin | Jersey |
| Botswana | Jordan |
| Bulgaria | Kenya |
| Burkina Faso | Kuwait |
| Burundi | Lebanon |
| Cameroon | Lesotho |
| Canary Islands | Liberia |
| Cape Verde | Libya |
| Central African Republic | Lichtenstein |
| Chad | Luxembourg |
| Comoros | Madagascar |
| Congo | Madeira |
| Czech Republic & Slovakia | Malagasy Republic |
| Denmark | Malawi |
| Djibouti | Mali |
| Egypt | Malta |
| Ethiopia | Mauritania |
| Equatorial Guinea | Mauritius |
| Faroe | Mayotte |
| Finland | Monaco |
| France | Morocco |
| Gabon | Mozambique |
| Gambia | Namibia |
| Germany | The Netherlands |
| Ghana | Niger |
| Gibraltar | Nigeria |
| Greece | Norway |
| Greek Cyprus | OAPI |
| Greenland | Oman |
| Guernsey and Dependants | Poland |
| Guinea | Portugal |
| Guinea-Bissau | Qatar |
| Hungary | Ras Al-Khamah |
| Iceland | Reunion |

Romania
Rwanda
Saint Helena
San Marino
Sao Tome & Principe
Saudi Arabia
Senegal
Seychelles
Sierra Leone
Somaeli Republic (Somalia)
Soviet Union (Armenia,
Azerbaijan, Belarus, Estonia,
Georgia, Kazakhstan,
Kyrgyzstan, Latvia, Lithuania,
Moldova, Russia, Tajikistan,
Turkmenistan, Ukraine, and
Uzbekistan)
Spain
Sudan
Swaziland
Sweden
Switzerland
Syria
Tangiers
Tanzania
Togo
Tunisia
Turkey
Uarab
Uganda
United Arab Emirates
United Kingdom
Vatican City State (Holy Sea)
Western Sahara
Yemen
Yemen (Democratic Republic)
Yugoslavia (Slovenia,
Macedonia, Croatia, Serbia and
Montenegro, and Bosnia)
Zaire
Zambia
Zimbabwe

**<u>Schedule B</u>**

**EXCLUSIVE TERRITORIES**

The Philippines and the Indian Sub-continent, including:

Amindivi Islands
Andaman Islands
Bangladesh
Bhutan
Chagos Archipelago
India
Kashmir
Laccadive Islands
Lackshadweep
Minnicov Islands
Myanmar
Nepal
Nicobar Islands
Pakistan
Philippines
Sikkim
Sri Lanka
Tibet

Exhibit 2

## RELEASE AND SETTLEMENT AGREEMENT

THIS RELEASE AND SETTLEMENT AGREEMENT ("Agreement") is made and entered into as of the ___ day of April 2007 by and between Del Monte Fresh Produce International Inc. ("DMFPI") and GTL Limited ("GTL"). Each of DMFPI and GTL are also referred to herein as a "Party" and collectively as the "Parties".

### WITNESSETH:

WHEREAS, DMFPI and GTL have entered into that certain Canned Fruit Supply Agreement dated the 1st day of March 1990 (as amended, restated, supplemented or otherwise modified from time to time in accordance with its terms) pursuant to which GTL sells Canned Fruit to DMFPI and DMFPI purchases Canned Fruit from GTL (the "Supply Agreement");

WHEREAS, a DMFPI affiliate commenced an action captioned *Fresh Del Monte Produce Inc. v. Del Monte Pacific Limited and GTL Limited*, No. 07 CV 2217 (S.D.N.Y.), and demanded arbitration pursuant to Section 8 of the Supply Agreement (which lawsuit and arbitration demand shall be referred to collectively herein as the "Actions");

WHEREAS, DMFPI and GTL wish to settle, compromise and fully and finally resolve any and all claims between each other arising from or in connection with the Supply Agreement without further cost or expense on the terms and conditions set forth below.

NOW, THEREFORE, in consideration of the foregoing and of the mutual agreements herein contained, and intending to be legally bound, DMFPI and GTL hereby agree as follows:

1.    Unless otherwise specified, all defined terms contained in the Agreement shall have the same meaning when used herein. An "affiliate" of an entity, as used herein, means any other entity directly or indirectly owning, owned by, or under common ownership with such entity.

2.    DMFPI and GTL each agree that the Supply Agreement has been and is in full force and effect.

3.    In consideration of the mutual releases and other terms set forth in this Agreement, GTL shall pay DMFPI the total sum of Three Hundred Fifteen Thousand United States Dollars (US$315,000) (the "Settlement Amount") in settlement of all claims that GTL solicited, procured, accepted and/or fulfilled orders for the supply of Surplus Concentrate to users in the Territory other than from DMFPI as purchaser or broker in violation of the Supply Agreement. GTL shall wire transfer to DMFPI in accordance with the following wire instructions the Settlement Amount within five days from the date both Parties have signed this Agreement, and immediately upon receipt of such payment, DMFPI shall cause the Actions to be dismissed with prejudice.

JP Morgan Chase Bank
London, UK

SWIFT: CHASGB2L
Account Name: Del Monte Fresh Produce International Inc. (Monte Corlo. MC)
Account No. 24476201

4.      GTL represents and warrants that US$295,000 of the Settlement Amount equals 6% of the total aggregate sum of customer invoiced prices for all sales of Canned Fruit for users in the Territory by or on behalf of GTL and/or any of its affiliates, whether directly or indirectly, other than sales to DMFPI as purchaser or through DMFPI as broker up through the date of this Agreement. GTL represents and warrants that neither GTL nor any of its affiliates is presently soliciting, procuring, accepting or fulfilling any orders, whether directly or indirectly, for the supply of Canned Fruit to users in the Territory other than from DMFPI as purchaser or broker. GTL represents and warrants that, for the duration of the Supply Agreement, GTL and its affiliates will comply with all obligations under the Supply Agreement including without limitation Sections 11 and 12 governing the prohibition on supplying Canned Fruit to users in the Territory other than to DMFPI as purchaser or broker. The parties agrees that, in the event any claim is brought by DMFPI and/or any of its affiliates against GTL and/or any of its affiliates for violation of the Supply Agreement in any legal action or proceeding, that the prevailing party in such action or proceeding shall be entitled to recover from the other party and/or its affiliates all reasonable costs thereof, including reasonable attorneys' fees.

5.      In consideration of the mutual promises herein, DMFPI, on behalf of itself and its affiliates (collectively, the "DMFPI Parties"), hereby releases and discharges GTL and its affiliates from all actions, causes of action, claims and demands of the DMFPI Parties against GTL and its affiliates arising from or in connection with the Supply Agreement up through the date of this Agreement, other than claims for payment of any outstanding accounts receivable.

6.      In consideration of the mutual promises herein, GTL, on behalf of itself and its affiliates (collectively, the "GTL Parties"), hereby releases and discharges DMFPI and its affiliates from all actions, causes of action, claims and demands of the GTL Parties against DMFPI and its affiliates arising from or in connection with the Supply Agreement up through the date of this Agreement, other than claims for payment of any outstanding accounts receivable.

7.      This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of New York, United States, without giving effect to the principles of conflicts of law thereof. Each of Parties hereby irrevocably agrees and submits to the exclusive jurisdiction and venue of the courts of New York, New York in the event any action or proceeding is commenced by either Party arising from, related to or in connection with this Agreement.

8.      This Agreement may be executed in any number of counterparts each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signature pages may be exchanged by facsimile or e-mail. Executed facsimile or e-mail counterparts shall be satisfactory to consummate this Agreement.

9.      If any provision of this Agreement is held to be invalid or incapable of being enforced by

2

reason of any rule, law or public policy, such invalidity and unenforceability shall attach only to such provision and shall not in any way affect or render invalid or unenforceable any other provision of this Agreement, and this Agreement shall be carried out and interpreted as if such invalid or unenforceable provision were not contained herein.

10.    This Agreement constitutes the entire final agreement between the Parties with respect to the subject matter hereof and supersedes any and all prior discussions, agreements and understandings, both written and oral, between the Parties concerning the subject matter hereof. This Agreement may not be amended, modified or changed except by a writing signed by the Parties hereto. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective successors, assigns and affiliates.

IN WITNESS WHEREOF, the parties have executed this Release and Settlement Agreement as of the day and year first above written.

Del Monte Fresh Produce International Inc.

By: _____     Date: April 18, 2007
Name: HUBERT STEINWORTH
Title: SECRETARY

GTL Limited

By: _____     Date: April 18, 2007
Name: Richard W. Blossom
Title: President

Exhibit 3











Exhibit 4

4/4

## NYK LINE
NIPPON YUSEN KAISHA

# ARRIVAL NOTICE

**BILL OF LADING NO.** NYKS3170244250
**SHIPPER REFERENCE:**
**I/B CUSTOMER REFERENCE:**

| SHIPPER | CONSIGNEE | NOTIFY PARTY |
|---|---|---|
| SI-67559<br>Del Monte Philippines, Inc.<br>Bugo, Cagayan de Oro City<br>Philippines | TO ORDER | HIWA ROTTERDAM<br>ATTN: MR. PRONK VERHAVENSSTRAAT 20<br>NL - 3029 BE REOTTERDAM HOLLAND<br>PHONE: 00 31 - 10 24 45 234 |

| MAIL TO | BROKER |
|---|---|
| Hiwa Rotterdam Port Cold Stores BV<br>Postbus 6150<br>3002 AD Rotterdam<br>Netherlands | |

| Vessel/Voyage arriving at POD | Customs Reference | ETA at: Rotterdam |
|---|---|---|
| OOCL Qingdao | | on |
| | | Place Of Clearance: |

| Place of Receipt | Port of Loading | Cargo Pickup Location: |
|---|---|---|
| Cagayan De Oro, Misamis Oriental,<br>Philippines | Manila | RTM01 E.C.T. Delta Terminal<br>Europaweg 875<br>3199 Ld Rotterdam |

| Port of Discharge | Place of Delivery | |
|---|---|---|
| Rotterdam | Rotterdam, Zuid Holland,<br>Netherlands | Nederland |

# REMARKS

| Cntr Size/ Type | Container Gross Weight | Cntr Piece Count | Container No./ Seal No. | F L | RF | H z | Cargo Piece Count | Weight/ Measurement | Brief Cargo Description | Customs Reference |
|---|---|---|---|---|---|---|---|---|---|---|
| 20GP | 20982.000 KG | 72 DR | TTNU1692998 7756301 | F | | | 72 DR | 20982.000 KG 18.144 CBM | PINEAPPLE CONCENTRATE | |
| 20GP | 20982.000 KG | 72 DR | NYKU3101009 7756308 | F | | | 72 DR | 20982.000 KG 18.144 CBM | PINEAPPLE CONCENTRATE | |
| | | | | | | | Total : 144 DR | 41964.000 KG 36.288 CBM | | |

**Contact Office**

NYK Line (Benelux) B.V.
Rotterdam Building
Aert Van Nesstraat 45
3012 , CA Rotterdam
The Netherlands
Tel : 31 10 4031400
Fax : 31 10 2332113

This courtesy notice is subject to change. To obtain updated cargo status information please access our web site at www.nykline.com or call our customer service department. To avoid demurrage charges please forward release/transport instructions, especially for cargo with bills of lading issued to an inland cy / door location. Cargo will only be released / transports arranged as soon as all outstanding freight and charges are duly settled and, where applicable, a correctly endorsed B/l is surrendered at our office.

RTM - Rotterdam          Marielle de Bruin          marielle.de.bruin@ne.nykline.com